This case is case number 418-0628, In re the Marriage of Elliott. For the appellant, we have Mr. Wilson. Mr. Wilson, okay. And for the appellee, we have Mr. Peek. You may proceed, counsel. Thank you. If the court pleases, counsel. This is a case emanating from Fort County, Illinois, where, essentially, it arose to this level based upon a rule to show cause proceeding for failure to provide child support, as well as a petition to modify child support. This was a matter that was initially before the court in Fort County in 2009. At that point, the parties reached an agreement, there was a marital settlement agreement, which was incorporated, again, June 2009, into the court's order. The parties have managed to spaff off and on all these years. And there's a little girl who's the product of the marriage. So, in any event, what the mother did is filed a number of things. She filed a petition to modify child support. And, critically, that was filed based upon this 2009 judgment of dissolution of marriage in March of 2014. That's critical because that's basically two years before the statute in question here was enacted by the court or by the legislature. There were also three rules to show cause filed by the mother for failure to pay child support. The trial court held, basically, that the new statute, and I think that's how Judge Fitton classified it, which was effective January of 2016, controlled. Now, that's despite the fact that that statute specifically says in Section 801 that there are three things that would allow the court to apply this new statute. One, it is effective for proceedings commenced on or after the effective date of the statute. In other words, on or after January of 2016. Pending motions were filed well before that date. The second thing is it applies to any pending actions and proceedings commenced prior to its effective date. Well, that's obviously inapplicable to this situation. And, finally, in terms of a petition to modify, it's, they've got to be commenced prior. I'm sorry. Proceedings commenced prior to the effective date are not covered by the new statute. So, we got a bit of a blessing because the second district in the In Re Demerita Petting addressed all these issues. And it found exactly in the mother's favor. And, unfortunately, even though this was brought to the trial court's attention, the trial court ignored it and said, nope, the new statute applies. And, basically, the judge proceeded to hearing, this is a matter where it's a statutory construction or interpretation. And I believe, in our brief, we cited that this is a matter before this court, and it didn't know those situations. So, I think that it's completely up to this court's discretion to determine the application of Section 801. And I think we cited three or four different decisions, and Benning also specifically said that it's denial. And then it's, that's the standard, I believe, that this court should apply. Now, the only issue I think could possibly arise in this is that there are three rules to show cause were heard by the court. One of those rules to show cause was for the failure to pay child support. Counsel, before you move on to your next point, so with respect to the allegation that the trial court applied the new statute, was there any change in the language of the statute as it relates to the provisions that you are to utilize in considering a modification for child support? Yes. Yes. And because, basically, the new statute application, and Judge Fitton relied upon it in his two orders that were entered. Number one, he entered an order on March 16th, 2018. I apologize. The first order he entered was 31 January, 2018. Then he denied our motion to reconsider his decision on March 16th of 2018. But he specifically talked in his two orders about the applicability of the new balancing factors between the two parental incomes to determine what the appropriate amount of child support would be. Now, obviously, that was not applying the old 20% rule that most of us have lived by for many, many years. And I think some of the cases that we recited in the brief specifically say that the prior existing law should have application to these facts. But that just goes to our petition to modify child support, which statute applies. It doesn't go, I don't believe, to the rules to show cause. Because all three of those rules were based upon the court's orders in 2009. And the court then entered another order with respect to child support in 2012. So, I think, yes, it does have some teeth in it with respect to the issues before this court in this matter. The rules to show cause, I think, are a different issue. And one of those was filed before the effective date of the statute in January of 2016. But the other two was a rule that was filed in May of 2017 and yet another in August of 2017 after the effective date. I don't think that has any applicability because the orders of child support are the issue. And those were filed well before the new effective date of the statute in 2016. So, that takes us into the rules to show cause and contempt. We had a number of interesting developments. And Bennink specifically decried the fact that why did this case hang around this long before there was a decision made? Well, golly, so did ours. Good question. Pardon me? Good question. Well, the question is, during the pendency of this, Your Honor, we had three different changes of judges and two changes of lawyers. Actually, Mr. Peek's firm was involved, but he was not the attorney of record, if you will, at that point. So, he got in after the fact and I got in after another attorney withdrew. And so, between judges and lawyers all shifting around and playing musical chairs, it's not a good answer. But that's the answer that I offer. Should it have gone faster? Well, it's difficult for the county. We've got a sitting circuit judge here, but he's transferred around throughout the 11th Circuit and since it's not as populous of a county, the chief judge assigns him to hear cases in Bloomington with great regularity and also even in the county. As to the rules to show clause, did Judge Fenton make his rulings orally from the bench? Were there written findings made in regards to the three individual rules? Judge Fenton actually, being presented with the petitions for rules, he entered orders on those rules. He then heard those as part of the hearing and then entered his written rulings and denied all of the petitions for unusual reasons, if you will. What were the bases expressed by Judge Fenton as to not finding a respondent in contempt of court? The findings basically were that the mother had not presented enough evidence and the evidence was two-fold. It was presented and that's one of the reasons I think it would have been an abuse of discretion. And probably Judge Fenton's rulings were against the manifest weight of the evidence, too. But the reason I say that is we had presented a number of requests to admit under Supreme Court Rule 216. Until the last one, there was never a response to those. So if you don't respond within 28 days, it's admitted. It can't be controverted by the party upon whom it was served. So the father couldn't compete. We had the requests to admit and those requests to admit basically recited and attached all of the SDU, State Disbursement Unit, records. And the court orders in this said that the payments for child support were to be made through SDU. So we had all those records, they were admitted, they couldn't be controverted. Judge Fenton, in his first decision, said basically, I need a certified copy of those records and we need findings by the SDU as to an arrearage and interest. We got him, prior to the second decision, the certified records, certified by the director of the Department of SDU. Apparently that wasn't good enough because he said that basically we'd fail to sustain our burden of establishing by credible evidence, even though certified by the SDU director. By credible evidence that in fact these were the payments that were made and these were the payments that were supposed to be made. So we had the orders, we had the records of SDU, and counsel for the father admitted, finally after having objected that they were hearsay, and in our brief we've cited a number of cases saying they're not hearsay, but they are absolute official records as to what was supposed to be paid pursuant to the order and what was paid and disbursed to the mother. So we had that. So we had the certified records, and then we had, without objection, entered all of the income tax returns of the father, and many of the mothers, into evidence. So we had the evidence. We had an admission by counsel in open court that we know that he owes about $18,000, but we're not sure of the exact figure. So there was an admission that he hadn't paid his child support. There was an admission that nobody said he couldn't pay it. He just didn't. Well, under the progeny of Betz, and Benink has gone, and I'm very familiar with Betz, having had six different appeals before this court in that marriage, and Justice Steigman wrote about a 42-page decision on setting forth what is and is not contempt, indirect, civil, direct civil, and the whole nine yards. But in any event, based upon that long line of decisions out of this court, as well as Benink, once you establish, as the mother did here, that there's a court order requiring you to pay this amount of money, and it wasn't paid, the burden then shifts to the father to justify why that is not an indirect, civil contempt of court in derogation and noncompliance of this order. Judge Fitton never shifted that burden to the father who presented virtually no evidence as to why he couldn't pay it, except for his admissions that he could have paid the money. His paychecks, starting with about, at the time of dissolution of marriage, I think he was making about $60,000 a year, and by the end, the last payroll records we had, which were admitted into evidence, he was on the line to make $90,000 that year. He'd gone up to $60,000, and the court made findings in an issue thing in, I think it was 2012, that he was up to like $62,000 that year, and then went up $80,000, $85,000 for a couple of years, and then on the line to make $90,000. I know some trial judges do things differently in contempt proceedings. How did it occur here, or how did it proceed, that you, well, there was another, a different lawyer that was presenting the evidence of the payments? No sir, I did that. That was fine. Okay, well, so just, and this is on record, so you can just tell me how it proceeded. You set forth evidence of what the court order required in terms of payments. You set forth evidence of what payments the respondent had not made through the SDU. No, just what he had paid. Okay. We did not address the issue of what he hadn't paid. So what he had paid, and that then gave you what the shortfall was, right? Yes, and what we did... Did you then ask the court to did you specifically ask the court to make a finding at that point as to the respondent's failure to abide by the child support, the order, the support order and to shift the burden then to the respondent to establish that it was not a willful and contumacious violation of the order. Is that how you proceeded? I don't think I ever specifically asked that, but we did final arguments. That was all specified. We presented documentary evidence, which was and then there was objection in the briefs to that documentary evidence that it's not really evidence. Well, that's right, it's not, but what it did do is, and I think there are three pages in the record where I cite out exactly what, this is what he should have paid, this is what he paid, this is what he's still doing owing and that amount was about $25,000 at that point. So to that extent we dumped it all on the judge and said, hey, Judge Fenton, this is exactly what we think he's short and we asked that he be found in contempt and that was in our argument to the court in writing and he declined to do it because for some reason he wanted this determination by this executive branch of the government as to their being contempt. So counsel, specifically in the court's order on your motion to reconsider the court noted that he still hadn't received what he was referring to as a certified accounting and he indicated that the payment history that you presented showed payments totaling $102,084.72 over the life of the case but that it did not show a detailed finding regarding an arrearage or an amount owed along with the statutory 9% interest. Is that accurate? I think that's what the judge was saying and I think, frankly, with all due respect to Judge Fenton, who I consider to be a friend, he's trying to get somebody else to do his job. He's trying to get the legislative branch to make a finding of contempt and at that point I think the burden had shifted to the other side to present reasons why he hadn't paid and why he was not in contempt and a lot of those things were also brought forth in our motions for summary judgment which were also denied and I see I'm about out of time, Judge. You have until the red light. But on the rules to show cause, I think there was a fear to shift the burden as the case law clearly requires in this manner and finally with respect to the summary judgment motion and I won't get to the other issues about his ability to pay by squandering $40,000 to his ex-wife and a down payment on their joint bank accounts where they're commingling all their assets. The fact that he was supposed to sign title to the house over to his wife, he still hadn't done it. He was supposed to separate the bank accounts, didn't do that and frankly we have pictures introduced where they were still holding hands two months after this divorce and they were still living in at least in the same lot, the house they bought jointly, so I apologize. You will have some additional time on rebuttal if you desire counsel. Going back to these same points or other points, Judge? Whatever you choose to tell us. Thank you. Mr. Peek. Thank you. This case is a troublesome one for many, many reasons. The parties were divorced in 2009 and then came back to court a number of times prior to 2014 on various motions to modify filed by the petitioner, Ms. Elliott, and those were typically granted. At one point in, I believe it was 2013, there was an agreement on an arrearage amount that was owed and then that amount, as I recall, was incorporated into payment order, so payments were being made on that arrearage amount. In 2014, both parties filed petitions to modify. The wife filed a petition to modify the underlying child support amount. The husband filed a petition to modify daycare amount. That gets us through up to 2014. Then from 2014 on, I became involved in 2014. Mr. Wilson was already there and we were working through discovery issues as well as the filing of at least one rule to show cause and we got the case set up to have a trial in 2016, in December of 2016. At that point, and you see my brief and I take complete responsibility for it, I missed that trial. We had a scheduling error and I missed that trial. It's probably the worst case of lawyering you could ever see. I accept that responsibility. Judge Fenton also gave Mr. Wilson fees based on that issue. At that point, Mr. Wilson had entered by the court a new garnishment order. Mr. Elliott had been having around $800, $900 a month garnished at that point from his wages which also becomes a troublesome issue because Mr. Elliott is a monster truck driver. He's not paid weekly. He's not paid monthly. He's paid per performance. When these amounts are garnished from his wages, they're not garnished with any regular amount. They don't go to the SDU with any regularity. It sets it up for the petitioner. At that time, Mr. Wilson had put in place a new garnishment order that was substantially higher than the previous amount based on his calculations with respect to what he thought was owed. As we worked through 2017, getting ourselves up to a new trial date, finally discovery issues taken care of. We'd had hearings on the contempt issues. I'd made the request at those hearings because my client wasn't present. He lives in Florida, that all the contempt issues be deferred until when we have everybody present for trial. Mr. Elliott could then defend himself. He could present whatever case. Judge Fenton agreed with that. All the rule to show causes, all the contempt issues were all deferred by the trial court until the actual trial date. I believe the judge has discretion to do that. Then we get through the trial. In this case, it's a question of math. Under the new statute then, is it the case that the child support amount changes? Is there a substantial change in circumstances such that Mr. Elliott should have to pay more? When you do the math, based on his taxes, there's no increase. This is based on the new law. This is the question then, does the new law apply? I posit the court got it wrong. They got it absolutely wrong. Their reading of 801B, this act applies all pending actions and proceedings commenced prior to its effective date. We have that. These petitions to modify were filed prior to January 1st of 2016 with respect to issues on which a judgment has not been entered. As you are aware, the Benning Court decided that that child support judgment had been previously entered. That's not the issue on a motion to modify. It's not whether there's a prior child support judgment. It's is there a substantial change in circumstances, as it says in 5-510, such that a modification is warranted. We're not talking about this previous judgment. We're talking about a judgment on the issue of whether there's a substantial change in circumstances. And counsel, what are the differences between the new provision and the old provision with respect to a modification of child support? Under 510? Yes. If there is no change with respect to the underlying substantial change of circumstances. There is no change there. Certainly there's other factors that the court could consider. I think the court could consider those previously anyway. There's a list. It's not exclusive. It's not all inclusive. The court has wide latitude to consider what is a substantial change in circumstances, but the underlying measure is if there is a substantial change in circumstances. Judge Fenton, after doing the math, did not find that there was a substantial change in circumstances. Well, I asked the question about what is the difference and I asked opposing counsel the same question because if there is no difference, why does it matter if Judge Fenton applied the old statute? Here's where it matters. Under the old statute, there was a strict 20%. Okay? And I will give you, under the old statute, if this court were to find that the old statute applied, Mr. Elliott would end up paying more. Okay? But under the new statute, and I believe it is a new statute that applies, it's a new statute that applies under 801B, I think the Benning Court got that one wrong. They considered the wrong issue. The new statute is the one that ends up applying. Did you say 801? Yes, at 750 ILCS 5-801. At the end of the Marriage Dissolution of Marriage Act, there is the application severability clause, which makes any change in prospective after its date. Okay, I understand that. I guess what I'm getting at is what is it with respect to the modification of child support and what the trial court is to consider what's the difference between the old and the new. You started to say under the old it was strictly just the 20%. That's correct. And so... Under the new statute, there's the income sharing formulation that we've been given. You take the wife's income, you take the husband's income, you figure out their net based on their taxes, based on their tax returns. It's strictly numerical at that point for what the obligor is going to end up having to pay. It's a different calculation. Typically, in our experience, the obligor ends up paying a little bit less. And that is what in this case, he didn't end up paying less. He ended up with the exact same amount. And based on the fact that he'd end up paying the exact same amount, Judge Fenton found that there was no substantial change in circumstances. With respect to the rules to show cause, just to go back to that briefly, both parties have filed motions to modify. Both parties put the payment amounts at issue. Then the question becomes over time, what is the correct amount that he should be paying? We haven't got there yet. Then we have Mr. Wilson's garnishment order, which is greatly in excess of what he'd been previously paying. Now, we have to do, and I believe Judge Fenton was correct in doing so, and if I recall, I had requested at trial that one thing we need to do is have an actual accounting to calculate the interest, to calculate arrearages if the modification was at all retroactive. Do we have to go back, figure out new amounts? Because at this point, Mr. Elliott had been paying for a year almost. Well, over a year. December of 16 through to January of 17, he'd been paying at this increased rate beyond then what his previous rate had been. So there's credits that then are owed to Mr. Elliott. We've got to figure out, with full accounting, how much money does Mr. Elliott get credited? When was his arrearage paid off? And where is the interest? Where is it applied? The accounting needed to be done. It still needs to be done, unfortunately. Who's supposed to do this full accounting? If you get with the SDU and the Illinois Department of Human Family Services and request that they perform an accounting, they do that. That's one of the things that they do. And it's not just a simple payment history with respect to Mr. Wilson's argument. It is a full accounting. The payment history doesn't tell you the full story. It just says when payments were made and if those are correct, it lists an arrearage based on what they believe. But that arrearage in and of itself doesn't take into account any modification, any interest. It's just the amount that they think they're supposed to be getting based on a periodicity of the previous order. So the documentation they obtained did include an arrearage? I believe that the 2012 order that was entered by the trial court included a portion that was to be paid against the arrearage. Right. But what I'm saying is with the documentation from the SDU or whatever it's called, the State Disbursement Unit, from the SDU, did it have a category? It does not break it out into categories, Your Honor. It just lists an amount and the periodicity. And so for an accounting, they're going to take into consideration all the orders entered by the court? Yes, Your Honor. They look and say this is the daycare amount that was entered on this day. It's supposed to be paid at this time. This is the base child support amount that was entered on this day. It's supposed to be paid. This is the portion of the SDU payment that's supposed to include the arrearage. And calculate that, those payments, as well as interest accruing. And give the full accounting so that we have a complete picture. Now, when a rule to show cause is issued, normally what happens is if the judge issues the rule, then you have to come forward and show why you should not be held in contempt. And I say you obviously, I'm referring to your client. So, was the proper procedure followed here? I mean, opposing counsel says the burden never shifted. With a contempt finding and rule to show cause, it's the discretion of the trial court. Mr. Wilson's told you he never specifically asked the trial court to do this on this date. And I asked the trial court, Judge, we should defer all these to the full trial date when my client is here from out of state so we can take care of this all in one fell swoop. And that is what Judge Fink did. He continued all the rule to show cause hearings until we had the ultimate trial. But when you had the ultimate trial, you and your client admitted there was an arrearage, right? That admission actually happened several months before. You even said that in arguing, right? We know he owes an arrearage. And he did at that time. He had an arrearage and we hadn't calculated what that exact amount was. But then with the imposition of the new garnishment order, we believed that the arrearage actually was taken care of. And I think after this court makes its final decision, that's what our finding is going to be when we're going to go back and get this full account because it still hasn't been done yet. So at the final hearing on this, you did not admit that there was an arrearage? That is correct, Judge, because with respect to the motion to modify, if the trial court deems it necessary, it's potentially retroactive to the filing date. And so if there was a modification that the trial judge were to find, say, on the daycare amount where our argument was that our client had paid in excess of the daycare fees, then he would get a credit for those amounts and that credit retroactively could take care of the arrearage or any other amounts, which it looked in 2016 hadn't been paid, but then in 2017 when we have the hearing  now. So to the extent that there was admission, it was just with respect to the pharmaceutical expenses? I'm sorry, Judge, I'm a little hard of hearing. I'm sorry. To the extent that there was any admission that there had been a failure to pay, that had to do with the pharmaceutical expenses? It was $17 and something. Yeah, but is that the situation where there was admission? That situation, Mr. Wilson and I, we exchanged some barbs in court on that, as we often want to do. And Mr. Wilson's client had emailed the request for payment to herself. And perhaps we need that answer, but to the extent that there was any admissions as to being arrears? Sure. And it was my reading of the circumstance where there was admission that your client was behind, and I know he has an explanation. But was there any other admission as to being arrears at the time of the trial? At the time of trial, I believe what you're going to have on the record is my statements that I've told you here today. Once we figure out the retroactivity, once we calculate the interest, then we're going to have to see, and it's going to be fully dependent on an accounting. With respect to the pharmaceutical, Ms. Elliott had emailed the request to herself, and that was a request that we were getting. My client had never received it. He had previously mailed her the insurance card for the use of the minor child's health care. He'd sent it certified. It was returned to him. She refused to pick it up. These parties are contentious. Mr. Wilson brings it to court, well, he still hasn't paid the $17. I believe I paid it to him right then and there on the spot with the $20, if I recall correctly, Paul. They're contentious parties, and they can't work together. They don't work together. There's numerous other issues that obviously aren't before the court, and I'm just not even going to go into them. So, all things considered, I'll wrap up. I know I haven't used my time. With respect to Benning, I believe that the court in Benning did miss the mark. They missed the mark with the application of the new statute and how they've read 801B. We do believe that the new statute should apply and that because of that, that there is no substantial change in circumstances with respect to this. Judge Fenton's finding with respect that there's no substantial change in circumstances should stand additionally because it's a matter of discretion for the trial court when to have these hearings, when to make its decisions. I also believe that with respect to the rules to show cause, that the trial court should properly exercise their discretion in kicking all of those to the ultimate trial date and then stating, well, we do need to have an accounting so we can figure out exactly where the money goes. Thank you. Thank you very much. Thank you, Mr. Wilson. Thank you, counsel. Any rebuttal, Mr. Wilson? Counsel is quite correct about the throwing barbs at one another. We're pretty good at that. If I said that they had never paid the pharmaceutical bill, I stand corrected. We did have $20 flipped across the counsel table to me in open court on that. I believe that was the second rule to show cause on pharmaceutical bills. If nothing else, that's an admission right there that you're in conjunctive court because you didn't pay it in a timely fashion. Be that as it may, the court had questioned me with respect to did I ever specifically ask Judge Fitton to enter a finding of indirect civil contempt. The court will find in my closing argument, and that's at the appendix page 323, C661, a specific request that court, among other things, find the father an indirect civil contempt of court. With respect to a default judgment, yes, there was a default judgment when counsel didn't appear for court on an agreed upon date. We all stood in open court and even the judge offered one date and we couldn't do it because counsel was getting married, not this counsel, I've been married a long time, but counsel for the father. But in any event, we had an agreed upon date and nobody showed except me and my clients and their evidence. At that point, Judge Fitton entered an order finding, among other things, almost $25,000 was due and owing in unpaid child support. The judge, despite my request that we get attorney's fees for the vacation of it, didn't order it at that point. In a subsequent order, he said, oh yeah, and by the way, you had to pay counsel for the mother. It was $3,000 within 60 days. Obviously, an appeal followed, so that wasn't paid. In any event, the petition to modify that we filed was filed years before the new statute came into effect. Subsection C of the statute specifically says that the act applies to all proceedings commenced after its effective date. That's exactly what Benning said. This was filed before the commencement date of this. What is commencement? Benning told us. There is no other case law interpreting this. Benning fell out of the clouds for us in terms of hitting virtually all points presented to this court squarely in the face and as of a few days ago, there had been no other decisions interpreting Benning in any other way. Benning was a case that was decided in the 2nd District and subsequently, they had a re-hearing on it and that delayed the effective official date until January of this year by the Supreme Court office that says, yes, this is a law now. Counsel, was there an admission that the respondent owed that there was an arrearage that he had not paid and owed? The admission was that it was in excess of $18,000. And when did that admission occur? Judge, I don't know. So not at the most recent final hearing? I don't believe so. That's just my best recollection. The interesting thing is the amount that was supposed to be paid for daycare was like $108 by weekly. How on earth is that going to make up $18,000? It's ridiculous to suggest that he may have overpaid. Thank you. Thank you, Counsel. We'll take this matter under advisement and be in recess until the next case.